IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| JASON CLIFFORD CONWAY, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil No. 7:08-CV-195-O-KA |
| RICK THALER,[1] Director, | ) | |
| Texas Department of Criminal Justice, | ) | |
| Correctional Institutions Division, | ) | |
|     Respondent. | ) | |

## Findings and Recommendations

### Procedural History

This is a petition for writ of habeas corpus challenging the parameters of Due Process in the prison disciplinary proceeding context. Petitioner Jason Clifford Conway had a disciplinary hearing on January 25, 2008 to answer an offense report that he had committed the offense of extortion within the McConnell Unit of the Texas Department of Corrections in Beeville, Texas. At the disciplinary hearing, the Disciplinary Hearing Officer (DHO) found him guilty of the charged offense of extortion and assessed a punishment of loss of 500 days of previously earned "good time" and imposed other lesser sanctions.

---

[1] Nathaniel Quarterman has retired as Director, Texas Department of Criminal Justice, Correctional Institutions Division and, effective July 15, 2009, Rick Thaler assumed that position. Pursuant to FED. R. CIV. P. 25 (d)(1), Mr. Thaler is automatically substituted for Mr. Quarterman in this action because injunctive relief is sought from the Respondent in his official capacity.

1

Promptly on February 4, 2008, using the prison prescribed grievance system[2] Conway appealed his case to the Warden claiming that the DHO had violated his procedural due process rights because she had participated in the incident/investigation of the offense and therefore was biased against him. He further challenged the sufficiency of the evidence of guilt of the extortion offense on several grounds and asked that his good time be restored.

Promptly following the Warden's affirmance of the decision of the DHO,[3] Conway pursued a Step 2 grievance,[4] seeking review by a higher unit official and again asserting that the DHO was biased since she was an active participant in the "incident/investigation" in direct violation of the prison's own Disciplinary Rules and because there was not "solid evidence" of extortion. When this Step 2 grievance was also denied, Conway sought Independent Administrative Review at the Regional level pursuant to the provisions of a Department administrative directive.[5]

Conway's request for review came to Bud Howard who was then serving as the Regional Disciplinary Coordinator for the Region that served the McConnell Unit as well as other units in the Region. Under the provisions of the administrative directive (AD-04.35) he was authorized to conduct an independent or operational review of disciplinary cases tried at the unit level. He

---

[2] Step 1 Grievance, Respondent's Exhibit 6, page 7. (Note: Due to the admission of one prior exhibit at the time of the hearing, the exhibit numbers designated in the Court's exhibit list, Docket No. 25, vary one number from the numbers in the exhibit volume tendered in the hearing. Unless otherwise stated, I will be referring herein to the exhibit numbers assigned in the exhibit volume admitted during the hearing.

[3] Respondent's Exhibit 6, page 8.

[4] Respondent's Exhibit 6, pages 9-10

[5] Respondent's Exhibit 10. Administrative Directive AD-04.35 that addressed Review of Offender Disciplinary Actions.

conducted his own independent investigation of Conway's case, including a personal interview with Conway and a review of the administrative record of the disciplinary proceeding.  As a result of his investigation, he reduced the charge from extortion to "trafficking and trading," a level 2, 15.0 offense, finding that it was a "more appropriate charge" than extortion[6] and finding that there was sufficient evidence in the record that he reviewed that supported a finding of guilt of that charge.[7] He recommended a lesser punishment that resulted in Conway's loss of 50 day's good time, rather than the 500 days imposed in the case at the unit level by the DSO. These findings were communicated by Howard directly to Conway by letter.

Pressing his case even further, Conway sought further review by Howard,[8] now claiming that Howard's decision to reduce the charge to the offense of "trafficking and trading" and imposing a lesser punishment deprived him of due process.  Citing the Supreme Court's decision in *Wolff v. McDonnell*, [9] Conway alleged that his due process rights had been denied since:

1. He was not given notice of the trafficking and trading charge;

2. He was not given the opportunity to call witnesses and to present documentary evidence in his defense of that charge; and,

3. He had not been provided with a written statement by the fact finder as to the evidence relied on and the reasons for the decision.

Conway claimed that these mandates of *Wolff* also applied to Howard's decisions.  Furthermore,

---

[6] Respondent's Exhibit 6, page 16.

[7] Tr. 110-111; Respondent's Exhibit 6, page 18.

[8] Respondent's Exhibit 6, page 20.

[9] 418 U.S. 539, 94 S. Ct. 2963, 41 L.Ed 2d 935 (1974).

3

Conway claimed that under *Teague v. Quarterman*,[10] prior knowledge by the alleged offender of a transfer of money was necessary to establish guilt of the offense of trafficking and trading and Howard did not have before him any evidence of Conway's knowledge of Lindberg's attempted transfer.

On August 27, 2008, this last request to Howard was denied.[11] On November 20, 2008, Conway filed his petition for writ habeas corpus in this Court. After leave to proceed *in forma pauperis* was granted by the Court and the Respondent was directed to answer, the case was referred to the undersigned for hearing, findings and recommendations.[12] Counsel was appointed by the Court to assist Conway in the hearing. A full plenary hearing was conducted on June 15, 2009.

Factual Background

In late December 2007, Plaintiff Jason Clifford Conway was a prisoner at the McConnell Unit of the Texas Department of Corrections in Beeville, Texas. On December 29, 2007, while in the Safe Prisons Department in discharge of his duty to review money withdrawal requests (slips), Norris Jackson, the Assistant Warden of the McConnell Unit,[13] reviewed a slip requesting withdrawal of some funds from the Inmate Trust Fund account of another prisoner named Walter "Woody" Lindberg and transfer of those funds to one Anisha Viser, a non-prisoner female

---

[10] 482 F. 3d.769 (5th Cir. 2007)

[11] Respondent's Exhibit 7, page 26.

[12] Order Referring Case, Docket No. 17.

[13] Throughout the disciplinary hearings and the court hearing Norris Jackson was referred to as "Warden Jackson" and this reference will be maintained herein.

outside of the prison system.[14] The amount of the requested transfer was $1,100.00. This amount caught the eye of Warden Jackson, he blocked the transfer, and he promptly dispatched Sergeant Darren Mayer to interview Offender Lindberg. Offender Lindberg initially told Sgt. Mayer that the money was for child support but later allegedly told Sgt. Mayer that Offender Jason Conway was taking money from him totaling $2,100.00. Warden Jackson made a further investigation on his own and discovered that on the 20th of December, Offender Lindberg had made a previous withdrawal and transfer of $1,000.00 to the said Anisha Viser. Warden Jackson then initiated a search of some of inmates' cells, including those of Lindberg and Conway.  "Participating" in the search were Sgt. Mayer, Warden Jackson, and Major Evelyn Castro.[15] The degree of Major Castro's "participation" in the search was a hotly contested issue raised by Conway.  Later that same day, Warden Jackson interviewed Conway about the transfers of the money.  The content and purport of that conversation was disputed.  Warden Jackson testified that during that conversation Conway stated to him that Lindberg owed him that money.[16]

As a result of the investigation, on December 31, 2007, Officer Mayer prepared an Offense Report[17] thereby initiating a major prison disciplinary action against Conway[18] charging Conway with a Level 1, Code 5.1, Extortion of Money offense claiming that Conway "did extort

---

[14] Sometimes euphemistically referred to as a "free-world" person. Tr. 86.

[15] Her rank at the time of the search was Captain, but later she became Major. This current rank will be used with her surname herein.

[16] Tr. 82.

[17] Respondent's Exhibit 3, pages 2-3. (All references to Exhibits are references to the Exhibits tendered and accepted into evidence at the evidentiary hearing before me on June 15, 2009, Docket No. 26.)

[18] Prison Case No. 20080116932

$2100.00 from offender Lindberg Walter 1031719 in that offender Conway used intimidation to receive the money."

A disciplinary hearing was scheduled for January 30, 2008.[19]  Prior to the disciplinary hearing Conway was afforded the assistance of a "Counsel Substitute."[20]  On January 25, 2008, prior to the disciplinary hearing, Conway was tendered and signed for a notice of the charge in the disciplinary action which stated the offense as follows:

> "ON THE DATE AND TIME LISTED ABOVE, AND AT SAFE PRISONS OFFICE, OFFENDER: CONWAY, JASON, TDCJ-ID NO. 00879351, DID EXTORT $2,100.00 FROM OFFENDER LINDBERG, WALTER, 1301719 IN THAT OFFENDER, CONWAY USED INTIMIDATION TO RECEIVE THE MONEY."

At the hearing on January 30, 2008, he entered his plea of not guilty.  DHO Evelyn Castro allowed Conway to make an opening statement during which he raised a defensive issue that there was no proof that Lindberg was "extorted or intimidated or forced" to do anything by Conway. DTR 3-4, 27. He accused Warden Jackson of threatening Lindberg to make him say that Conway forced him to send the money. DTR 4, 22. And he complained about Castro's, Mayer's and Warden Jackson's participation in the search of the cells. DTR 4. Castro then allowed Conway to read into evidence certain statements, one of which was Lindberg's stating "He didn't extort me" and another handwritten statement from Lindberg that stated, " To Mayer,

---

[19] A full transcript of the disciplinary hearing was introduced as Respondent's Exhibit 2 and is referenced herein as DTR.

[20] Named throughout the proceedings as CS3 Saenz. Respondent's Exhibit 3.

I was never extorted nor threatened by Jason. The money in question for Anisha Viser's children for Christmas. I sent the money on my own behalf." DTR 5.

The DHO then asked if there was anything else to be presented by Conway. Saenz replied that they wanted to cross-examine Sgt. Mayer. DHO Castro ruled that the cross-examination would take place during the "prosecution" stage and then enquired of Saenz and Conway if there was "anything else." SAENZ asked the same of Conway. Conway said "I don't–no I don't." DTR 5. Castro then took under consideration Sgt. Mayer's offense report, reading it into the record. She took note of additional exhibits containing handwritten notes taken from Conway's and Lindberg's cells showing the name and address of Anisha Viser, a list of names styled "Hit List" containing two entries of the name "Woody" and showing the monetary amounts of $1,000.00 and $1,100.00 beside that name. DHO Castro than placed a conference call to Sgt. Mayer who was first examined by DHO Castro and then cross-examined by Saenz using written questions provided to her in advance by Conway. Conway also posed questions to Mayer during that hearing.

During the cross-examination of Mayer, CS3 Saenz did ask Mayer,

Q. Do you have any witnesses to the alleged threats?

A. No, ma'am.

Mayer then alluded generally to "a verbal threat of physical harm." To this Conway asked, "They have no witnesses?" To which Saenz answered Conway saying "He said 'No.'" Anything else?" There then followed an extensive discussion by Mayer how that threat was or could have been communicated to Lindberg. At the conclusion of the hearing first Saenz and then Conway each argued about the absence of any evidence of any threats of violence by Conway against

7

Lindberg. Conway also argued that "he [Lindberg] filled out the withdrawals on his own He went down and done everything on his own ... He never tried to tell anybody what he was doing."

At the conclusion of the disciplinary hearing DHO Castro found Conway guilty of extortion and assessed the punishments.

At no time, either before or during the disciplinary hearing was the offense of "trafficking and trading" mentioned.

### Plaintiff's Allegations

By his original Petition and his contemporaneous Memorandum, Conway raised eight issues, the first five directed toward the disciplinary hearing:

1. Participation of the DHO in the incident/investigation;
2. Insufficiency of the evidence to support the finding of guilt of extortion;
3. Denial of the right to call/question witnesses;
4. Failure of the DHO to give written statement of reasons for the guilty decision and the evidence supporting the decision; and,
5. Failure to further investigate challenged evidence.

The last three issues were directed toward the review by Bud Howard;

6. Failure to overturn a "guilty finding;"
7. Failure to serve a notice of the change of offense from extortion to trafficking and trading; and,
8. No evidence of Conway's involvement in Lindberg's "unauthorized withdrawal."

8

<u>Hearing Officer Bias</u>

A Prisoner is entitled to have his disciplinary proceeding presided over by an impartial (unbiased) decision maker. *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). In order to prevail on a claim of bias of the decision maker, a prisoner must show that actions taken by the decision maker "presented such a hazard of arbitrary decisionmaking that it should be held violative of due process of law." *Morgan v. Quarterman*, 570 F. 3d 663, 668 (5th Cir. 2009).

Conway's claims that his disciplinary hearing officer (DHO) Castro, was biased against him since she "participated" in a search; she overheard the Warden state that Conway was a "confirmed extortionist;" and, she manifested her bias by the way she conducted the disciplinary hearing and documented her decision at the hearing and in subsequent grievance proceedings.

I find that the "participation" of Major Castro in the "search" of offenders' cells was so limited in nature and extent that it did not affect her impartiality as Conway's Disciplinary Hearing Officer. She testified that although she "participated" in the search for approximately 5 minutes, she was not told the nature or object(s) of the search. She testified that searches of prisoner's cells were typical and not unusual. She testified that during the search she did not enter Conway's cell and did not know the allegations against Conway. I find that Major Castro's testimony was credible. She further credibly testified that she had not reviewed any investigatory documents prior to the hearing and that the first evidence she saw regarding Conway's disciplinary case came at the time of the hearing itself.

I find that Conway's assertions and testimony that Warden Jackson directly told Castro that Conway was a "confirmed extortionist" were not credible. I find that the testimony of

Warden Jackson and Sergeant Mayer was credible, that such a statement was not made to Castro, and that Conway was not even in the proximity of them to even be able to hear such a statement. It further appears that Conway merely lifted that phrase "confirmed extortionist" from an entry on a Notification penned by Warden Jackson[21] that appeared in the record of his case but which Officer Castro never saw prior to the disciplinary hearing.

I find that as a result of Castro's "participation" in the search of other offenders' cells (and not Conway's), she was not exposed to and did not receive any pre-hearing information which would "present a hazard of arbitrary decisionmaking" as to be a violation of Conway's rights to due process. I further find that Conway did not demonstrate by any credible evidence that Major Castro's conduct during the hearing or in the decision making showed or manifested any bias, prejudice or pre-judgment of Offender Conway.  Conway's bias claim against Major Castro was and is without merit.

Sufficiency of Evidence of Offense

A reviewing court is required only to find "some evidence" supporting a disciplinary officer's decision. *Morgan v. Quarterman*, *supra* (citing *Richards v. Dretke*, 394 F. 3d 291, 294 (5th Cir. 2004)). Applying that standard, I find that there is "some evidence" in the disciplinary hearing record that supports DHO's determination that Conway was guilty of extortion.  Although there was a lack of direct witness testimony that Conway ever threatened Lindberg, there was certainly circumstantial evidence that Lindberg's attempted withdrawal was coerced by Conway.

Woody's name was twice on a "Hot List" found in Conway's cell and next to the name entry were the two withdrawal amounts of $1,000.00 and $1,100.00, the very amounts Lindberg

---

[21] Respondent's Exhibit 6, page 3

10

directed withdrawals to be sent to free-world person Anisha Viser. Her name and address were found in Conway's possession as well as Lindberg's. Lindberg's explanations or statements as to the purported purpose of the withdrawals were in direct unexplained conflict. Conway's own statements in the investigation, at the disciplinary hearing, in his sworn pleadings, and at the Court's evidentiary hearing were in irreconcilable conflict with respect to the extent of his knowledge of and purpose for Lindberg's withdrawals. DHO Castro was in the best position to view, hear, and assess the credibility of the witnesses and evidence before her. Her guilty finding of the offense of extortion is supported by "some evidence."

While Bud Howard concluded otherwise following his investigation, his conclusion as to the lack of sufficient evidence to support the extortion guilty finding was based upon his view that another offender's testimony must be corroborated by other testimony or evidence to sustain a conviction. While this position regarding the necessity of corroboration of an offender's statements in order to sustain a conviction may have salutary beneficial effect in the prison disciplinary proceeding context, it is not mandated by due process. Conway was afforded full right of appeal of the DHO's decision through the properly administered Step 1 and step 2 grievance procedures prescribed for disciplinary case appeals.[22] At each such step, the reviewing officer determined that there was sufficient evidence of Conway's guilt of the charged offense of extortion.[23] This court does not disagree.

Denial of Witnesses

The record of the disciplinary hearing simply does not support Conway's allegation of denial of the right to call witnesses with respect to the extortion charge. After accepting into

---

[22] Respondent's Exhibit 10, pages 5-10 and Exhibit 10 pages 52-54.

[23] Respondent's Exhibit 6, pages 8 and 10.

evidence the written statements of Lindberg and permitting Conway through his counsel substitute to examine Sgt. Darren Mayer directly, the DHO dutifully inquired whether prospectively Conway had anything else. To which inquiry, Conway himself answered "No, I don't." DTR 5.

While the cross-examination of Sgt. Mayer was conducted by CS3 Saenz, rather than by Conway, such examination by a counsel substitute in lieu of the offender himself is a matter of discretion for the DHO. Such discretion was not abused and the examination was appropriately and sufficiently conducted by CS3 Saenz on Conway's behalf. With respect to the presentation and cross-examination of witnesses at the disciplinary hearing, I find that Conway was afforded due process.

Statement of Reason and Evidence

*Wolff v. McDonnell* also mandated that due process in the prison disciplinary proceeding context required that "there must be a 'written statement by the fact finders as to the evidence relied upon and reasons for the disciplinary action.' " The state presented as the "written statement" that section of the Disciplinary Report and Hearing Record form[24] wherein DHO Castro entered "B-Officer's Report and Verbal Testimony and D-Documentation." This single page was given to Conway in hand at the conclusion of the disciplinary hearing. TR 54-55. However, at the hearing itself, DHO Castro read into the record the written offense report of Sgt. Wayer and exhibited the address notes and "Hit List" and Lindberg account ledger. TR 56; DTR 7-8. Although the entries on the Disciplinary Report and Hearing Record form could be characterized as minimal, terse and sparse, I find that those entries coupled with the DHO's recitations of the Offense Report and the purport of the exhibits attached to it at the hearing itself,

---

[24] Respondent's Exhibit 3, page 1.

gave Conway sufficient statement of the evidence against him and reasons for the DHO's decision of guilt as to meet the due process standards articulated by the Supreme Court in *Wolff*.[25]

Accordingly I find and conclude that Conway was afforded all of the "due process" that the law requires with respect to prison disciplinary proceeding <u>at the unit level</u>.

Due Process on Howard's Review

Had the matter ended at the unit appeal level, this matter would not deserve further comment. But Conway pursued further review. And Bud Howard, the Director of the Counsel Substitute Program, granted that review. Following Howard's review he made the decision to reduce the charge from extortion to "the more appropriate charge" of "trafficking and trading" and to recommend a lesser punishment commensurate with that offense. Conway challenged that decision on the grounds that in reducing the charge Howard did not afford Conway "due process" because he did not give Conway the *Wolff* mandated 24 hour notice of the charge, a right to present evidence, and a statement of the evidence relied upon to support the conviction of that offense. Conway further claims that Howard did not have before him sufficient evidence to find that Conway <u>knew</u> of Lindberg's attempted money transfer, a necessary condition to finding him guilty of the offense of trafficking and trading. The State counters Conway's claims by asserting that the offense of "trafficking and trading" is a "lesser included offense" to the charge of extortion. Being a lesser included offense within the definition contained in the Offender Orientation Handbook,[26] the offender is <u>charged</u> with notice that he must defend against such lesser charge. Therefore, argues the State, Conway was not entitled to any notice beyond that

---

[25] The Fifth Circuit has previously held that the *Wolff* mandate for a "some evidence" to support a guilt finding in the prison disciplinary context is met by the information contained in an incident or conduct report. *Hudson v. Johnson*, 242 F. 3d 534, 536-537 (2001).

[26] Respondent's Exhibit 10, Pages 18-19.

timely given to him prior to the disciplinary hearing. The State further posits that Howard had "some evidence" before him supporting his finding of Conway's guilt of the offense of trafficking and trading.

The first question this Court must address is what was the nature of and authority for Bud Howard's review of the unit disciplinary decision in Conway's case. The Disciplinary Manual provided to all inmates[27] provides that "[A] disciplinary decision may be appealed by filing a grievance. If the offender is not satisfied with the decision, he may then file a Step-2 grievance for appeal purposes."[28] Section III (B)(1) of the Directive relating to Offender Grievance Review states "Decisions rendered at Step 2 of the grievance review are *final*."[29] Administrative Directive AD 4.35 provides for both an agency review at the unit or agency levels and for an independent administrative review.[30] With respect to agency review at the unit level, Article II of the Directive provides for Appeal of Disciplinary Actions and specifies that an offender may appeal the decision of the DHO by use of the Offender Grievance Procedure. But the Directive does provide for "Correction of Disciplinary Actions in Section IV. Subpart A of that section authorizes the Administrator of the Counsel Substitute Program (among others) to conduct such an administrative review. Subpart (B) further provides for such an independent administrative review as follows:

> "B.   Independent Administrative Review
>       Under independent administrative review, a Warden may request to the

---

[27] Respondent's Exhibit 9.

[28] Ibid, Page 52.

[29] Page 9.

[30] Page 4.

> CRO[31] that a closed disciplinary report be corrected or deleted. However, if the request is for the conviction to be overturned, a rehearing may occur only after the report has ben deleted and notice of the correction has been received from the CRO. Additionally, a finding of not guilty may be overturned if the official has determined that procedural requirements were not met or applied properly or there is new evidence which was not presented or available at the hearing. The specific reasons for overturning a not guilty finding shall be documented on an IOC[32], which shall be placed in the offender's unit file. Unless otherwise directed, a rehearing may be conducted as described in Section II.A.3."

Further provisions follow that address the change and modification of offender records resulting from changes made following the administrative review, including the possibility of a rehearing.

I find that the express language of this section of the Directive reflects that the review *may* be initiated by *a Warden*. It does not grant an independent administrative review to *an offender* as a matter of right. States have no due process obligation to provide any appeal at all. *McKane v. Durston*, 153 U. S. 684, 14 S. Ct. 913, 38 L. Ed. 867 (1894). I conclude that Conway had no due process right to further review at the Regional level. Therefore, I conclude that the review conducted by Officer Bud Howard at Conway's behest was conducted and determined as a matter of discretion, not of right.

The issue then becomes whether a prisoner is entitled to the due process mandates of *Wolff* or otherwise in respect to a discretionary review. I have found no cases directly addressing this issue. However, in the discretionary review context other due process rights do not obtain. While a criminal defendant is entitled to effective assistant of counsel on direct appeal, *Evitts v. Lucey*, 469 U.S. 387, 392 (1985), there is no requirement that the Court appoint an attorney to represent such a defendant in a discretionary proceeding such as a petition for writ of *certiorari*. *Ross v. Moffitt*, 417 U.S. 600, 610, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974); *Clark v. Johnson*,

---

[31] Elsewhere defined as "Classification and Records Office."

[32] Elsewhere defined as "Inter-Office Communication."

227 F.3d 273, 283 (5th Cir. 2000). Accordingly, by analogy to *Evitts* and *Ross*, I further conclude that the prescriptions of *Wolff* with respect to notice of charges, presenting witnesses, and statements of reasons for decisions are not applicable to Howard's discretionary independent administrative review.  It would be anomalous that a prisoner, having received due process at the unit hearing and appeal levels, should be able to challenge the decision on due process grounds in a discretionary review granted as a matter of grace and not of right.

Lesser Included Offense.

Outside of the prison disciplinary proceeding context, both state and federal law recognizes the proposition that where charging instrument contains the elements of both an offense and a lesser offense, the charging instrument gives notice to the defendant that he may be convicted of either charge. *Carter v. United States*, 530 U.S. 255, 120 S. Ct. 2159, 147 L. Ed. 2d 203 (2000); *Schmuck v. United States*, 489 U. S. 705, 718, 109 S. Ct. 1443, 1452, 103 L. Ed. 2d 734,748 (1989); *United States v. Miller*, 471 U. S. 130, 105 S. Ct. 1811, 85 L. Ed. 2d 99 (1985). In determining whether an offense is a "lesser included offense," the federal courts use an "elements test." *Hopkins v. Reeves,* 524 U. S. 88, 97 n.6, 118 S. Ct. 1895, 1901 n.6, 141 L. Ed. 2d 76, 86, n.6 (1998) (citing *Schmuck v. United States, supra*).  When an prisoner is convicted of a lesser included offense based on factual allegations contained in the original charging instrument, his due process right of advance notice has been satisfied.[33]

The Texas prison Disciplinary Rules recognize the same standard relating to "lesser included offenses"[34] in respect to disciplinary proceedings and further provide that a hearing

---

[33] Accord see, *Walls v. Dretke*, CA-H-05-3680 from the Southern District of Texas, 2006 U. S. Dist. Lexis 41389 (2006) (citing *Northern v. Hanks*, 326 F.3d 909, 910-11 (7th Cir. 2003)).

[34] " When it is impossible to commit a particular offense without, at the same time and by the same conduct, committing a less serious offense, the latter is a lesser included offense, e.g.,

16

officer may find an offender guilty of the "lesser included offense," instead of the more serious offense, <u>without further notice and hearing</u>.  Furthermore, the Disciplinary Rules provide that where the charge is changed, no additional notice of hearing is required.[35]

I find that the offense of "trafficking and trading" as defined in the Disciplinary Rules[36] does constitute a lesser included offense to the offense of extortion as also defined therein because the elements of each offense, except for the degree of scienter, are the same.   It was not possible for Conway to commit the offense of extortion without, at the same time and by the same conduct, committing the less serious offense of trafficking and trading. While the offense of extortion required the proof of use or threat of violence or force, a greater level of scienter, the trafficking and trading offense required only proof of Conway's knowledge of Lindberg's attempted transfer. Of that knowledge there was sufficient proof at the disciplinary hearing and in the record reviewed by Howard.  Therefore, even if *Wolff* 's Due Process prescriptions would demand the giving of additional 24 hour notice to Conway at the unit level of a modification of the offense that did <u>not</u> include a lesser offense charge, no additional notice need have been provided to Conway of this "lesser included offense" at the unit level. I conclude that no such additional notice was required at the level of Howard's independent administrative review.

 I further conclude that remand for new plenary hearing is unnecessary.  I find that Howard's finding of guilt of the lesser included offense of trafficking and trading was supported by some, indeed sufficient, evidence.

---

possession of contraband and possession of contraband for planning escape, when the two charges involve the same items of contraband." Respondent's exhibit 8, page 19.

[35] Ibid, page 19.

[36] Respondent's Exhibit 9, page 26.

Recommendation

Accordingly, I recommend that the District Court deny Conway's requested relief on the merits and that a writ of habeas corpus not issue..

So ORDERED, this 13th day of October, 2009.

*[signature: Robert K. Roach]*
Robert K. Roach
UNITED STATES MAGISTRATE JUDGE

**Standard Instruction to Litigants**

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).